

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00211-CR

_____

KRYSTIN STEWART, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law #2
Hunt County, Texas
Trial Court No. CR1000601

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A jury convicted Krystin Stewart of theft of property valued between $50.00 and $500.00, and she was sentenced to confinement for 120 days in the Hunt County Jail. On appeal, Stewart complains that the evidence was insufficient to support the trial court's judgment.[1] We affirm the judgment of the trial court.

## I.      Standard of Review

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of theft in an amount between $50.00 and $500.00 beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (4–1–4 decision) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly

---

[1] In a separate point of error, Stewart also complained that a DVD recording of the theft, which was admitted as evidence and played in front of the jury, had been "destroyed or corrupted so badly that it cannot be viewed and is unavailable for appellate review." Based upon Stewart's assertion, and due to our inability to initially play the exhibit, we internally abated this appeal "until either (1) we have heard from counsel that the data on the DVD has been recovered and the parties agree to the content thereon; (2) the data on the DVD has been recovered, but the parties do not agree to the content thereon; or (3) the data on the DVD cannot be recovered." Thereafter, we received a letter signed by both parties stating that the DVD "duplicate was located in the defendant's co-actor's case file. The state and the defense have had a chance to review this copy and can verify that this copy is a true and accurate representation of the video that was on the damaged DVD." Because Stewart's complaint has been resolved, we overrule this point of error as moot.

resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

In this case, Stewart committed theft if she unlawfully appropriated property with the intent to deprive the owner of property. TEX. PENAL CODE ANN. § 30.03(a) (West 2011). Appropriate means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (West 2011). The appropriation was unlawful if it was without the effective consent of the owner. TEX. PENAL CODE ANN. § 30.03(b) (West 2011). The theft offense was a class B misdemeanor if the value of the property exceeded $50.00, but was less than $500.00. TEX. PENAL CODE ANN. § 31.03(e)(2)(a)(i) (West 2011).

## II.     Legally Sufficient Evidence Supported the Trial Court's Judgment

The State alleged that the theft occurred at Burk's Outlet. On the day of trial, two witnesses from Burk's Outlet testified. District loss prevention manager, Daniel Roacho,

3

encountered Stewart and co-actor, Cristal Mariucci, on the day of the theft. Roacho testified;

> The first thing [Stewart] did is she came around to . . . the purse area. And I've—I saw her select a black purse. She looked at it for a while and then she started—she put that over her shoulder. She also had a pink purse with her as well. So she carried both purses as she went throughout the store and started selecting other merchandise. . . . And she was selecting some jewelry and then she would go into the woman's department where she selected some other clothing items as well.

Roacho initially believed that Stewart was shopping alone, but soon it became apparent that she was with "this other lady that was acting really nervous." Roacho kept his eye on Stewart and Mariucci as they perused the store separately. He testified, "[Stewart] handed the pink purse over to [Mariucci] and they both walked and selected more merchandise, more clothing items." Roacho continued:

> At that point, [Stewart] went into the fitting room with the merchandise that she had selected as well as the black bag that she had with her. [Mariucci] went—followed her in there. As she went in—they both went in the fitting room. And then the Defendant came out of that stall that they were in, and came out and went into another one with clothing items as well as the black purse. At that point, she closed the door to the fitting room and the other subject came out and just, kind of, waited around outside for her. . . . At that point [Mariucci] walks into the fitting room with [Stewart] because she hadn't completely came out yet. They were talking. [Mariucci] . . . had a few clothes in her hand, handed the clothes back to the Defendant as well as the pink purse that she was carrying for her. The Defendant turned around and gave [Mariucci] the black purse, which was now packed, and they both started walking up towards the front.

Roacho's "observation was that the clothes were stuffed into the bag" by Stewart. Next, "[t]hey both approached the front of the register. The one person with the black bag just start—does not even bother to go to the register, starts walking out the door while [Stewart] goes up to the register

and attempts to pay for the merchandise that was never concealed." Roacho followed and confronted Mariucci as she exited the store and was about to enter a vehicle. He led Mariucci back to the loss prevention office, where both she and Stewart apologized to Roacho for stealing, turned over the stolen merchandise, and pleaded for forgiveness. Roacho recovered the stolen items.

Burk's Outlet store manager, LaSonja Balfour, was called to the loss prevention office after Stewart and Mariucci were apprehended. Balfour confirmed Stewart's admission to the theft and conducted an inventory of items stolen. The items taken included the black purse, two items of jewelry, two "tops," jeans, a fragrance, a "bath/body" item, and a "mis[s] bottom." The monetary value of the items totaled $88.24.

In addition to this testimony, the jury watched the in-store security video confirming Roacho's recollection of the events. The video was clear, followed Stewart as she wandered throughout Burk's Outlet, and zoomed in on items she picked up and carried.

When viewed in a light most favorable to the verdict, we find the evidence legally sufficient for a rational jury to conclude that Stewart committed theft of property in an amount greater than $50.00, but less than $500.00. Therefore, we overrule Stewart's point of error.

5

## III.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:     July 21, 2011
Date Decided:       July 28, 2011

Do Not Publish